IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAWNYA S.,[1]

       Plaintiff,                                         **Civ. No. 3:20-cv-02171-MC**

     v.                                                 **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

       Defendant.

_____

**MCSHANE, Judge**:

      Plaintiff brings this action for judicial review of the Commissioner of Social Security's final decision denying her application for supplemental security income ("SSI") under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff filed an application for SSI on December 12, 2017, alleging a disability onset date of July 19, 2017. Tr. 36.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.* Following a hearing, an administrative law judge ("ALJ") issued an unfavorable decision. Tr. 36–47. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. This appeal followed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Plaintiff argues the ALJ erred by discounting her subjective symptom testimony and rejecting the medical opinion of Kristi Weeks, MA, QMHP. Pl.'s Br. 5, 10, ECF No. 16. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence in the record, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's final decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after

considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step two here, the ALJ found that Plaintiff has the following severe impairments: obesity, history of carpal tunnel syndrome, hip arthralgia, bilateral hearing loss, vision loss in the right eye, and generalized anxiety disorder. Tr. 38. The ALJ determined that Plaintiff's other impairments—history of kidney disease, HIV, hypertension, and history of CVA (stroke)—were not severe because the record showed that Plaintiff's HIV was stable, she had no residual effect from her stroke, and she "only has routine care for her kidney disease." Tr. 39.

Next, the ALJ formulated Plaintiff's RFC. A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ found Plaintiff has the capacity to

> perform light work . . . except she is further limited to no more than frequent bilateral handling and fingering. [Plaintiff] would need to avoid jobs requiring good depth perception and binocular vision, and so should avoid all exposure to unprotected heights, moving machinery and similar hazards. She would need to avoid working in environments where there is loud background noise and she would need to avoid jobs requiring verbal communication in order to accomplish the work required by the job. She would also be limited to simple, repetitive, routine tasks with no more than occasional contact with the general public.

Tr. 41. Based on the vocational expert's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, including housekeeping cleaner, cafeteria attendant, and vinyl assembler. Tr. 46–47. The ALJ therefore determined that Plaintiff was not disabled. Tr. 47.

3 – OPINION AND ORDER

**I. Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred by not fully crediting her subjective symptom testimony as true. Pl.'s Br. 5. Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). When evaluating the claimant's testimony as to the severity of her symptoms, the ALJ considers several factors, including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record,

4 – OPINION AND ORDER

[this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified to various debilitating physical symptoms, including hip and wrist pain, shortness of breath, and difficulty hearing, as well as anxiety and difficulty sleeping. Tr. 54, 60–63. As to her physical symptoms, Plaintiff testified that her left hip pain and shortness of breath inhibit her ability to walk or stand for very long. Tr. 54–55, 59–60. She uses a cane if she must walk or stand for long periods of time. Tr. 54–55. Plaintiff testified that her carpal tunnel makes it difficult to carry several or heavy items. Tr. 57. She experiences tingling in her hands at night and difficulty holding onto items and doing her dishes without cramping. Tr. 57, 61. Plaintiff testified that due to her hearing loss, she cannot clearly make out what people are saying to her if they are not facing her. Tr. 63. At previous jobs, she has had trouble hearing certain noises or customers. *Id.* As to her mental impairments, Plaintiff testified that she sees a specialist for anxiety and PTSD. Tr. 61. Plaintiff struggles with sleeping, crowded spaces, and finding motivation to leave the house. Tr. 61–63. She testified that she would rather be indoors and will wait to take a less crowded bus. Tr. 62–63. Her anxiety medication helps her to relax and sleep at night. Tr. 61.

The ALJ discounted Plaintiff's symptom testimony as inconsistent with (1) the objective medical evidence, (2) Plaintiff's improved symptoms through treatment, (3) observations of Plaintiff's demeanor at the administrative hearing, and (4) Plaintiff's activities. Tr. 41–43, 45. The ALJ pointed to various treatment notes with unremarkable findings, and detailed how Plaintiff's hip and wrist symptoms, as well as her hearing and vision loss, improved with treatment through physical therapy, surgery, and obtaining hearing aids and glasses. Tr. 42–43. The ALJ also noted that Plaintiff appeared to have no difficulty with her vision or hearing during the administrative

hearing. Tr. 42. Finally, the ALJ found that Plaintiff's ability to live alone, use public transportation, go to church and grocery shopping, and care for herself and her grandson were inconsistent with her alleged debilitating symptoms. Tr. 45–46.

Plaintiff first argues that the evidence indicating an improvement with treatment is modest and not a convincing reason to reject Plaintiff's testimony. Pl.'s Br. 8; Pl.'s Reply Br. 2, ECF No. 22. Plaintiff was referred to physical therapy for her hip pain in October 2017. Tr. 346. She described her pain as "constant, achy pain localizing to the buttock and lateral hip." *Id.* She received a steroid injection that was "well tolerated and resulted in moderate relief." Tr. 349. On November 11, 2017, Plaintiff presented to physical therapy with gait deviations, decreased hip strength and balance, and pain with ADLs. Tr. 343. Her primary diagnosis was arthralgia of the hip. Tr. 344. At that time, her lower extremity functional scale score was 42, her percent of functional level was at 52.2%, and her percent of impairment level was at 47.5%. Tr. 344. On March 21, 2018, Plaintiff reported having "increased pain throughout the leg and limping which is making hip worse." Tr. 296. Despite those reports, her functional level increased to 65% and her impairment level decreased to 35%. Tr. 298. On March 28, 2018, Plaintiff reported her hip as "really sore" but that walking wasn't too bad. Tr. 292. On April 11, 2018, Plaintiff reported that her hip wasn't bothering her too much and overall she "feels 50% better." Tr. 280. She also reported being able to do more walking and carrying a light backpack. *Id.* On June 28, 2018, Plaintiff returned to physical therapy "following 2+ months away with reports of improved hip pain and walking tolerance." Tr. 818. Plaintiff reported that she had been doing stretches and half of the exercises, and that her hip wasn't doing too bad. *Id.* She reported that she "purchased a cane to use for when [her] hip is sore." *Id.* Plaintiff demonstrated "improved hip abduction strength to

4+/5 and significant improvement in PSFS score." *Id.* Her lower extremity functional scale score improved to 54, her functional level to 67.5%, and her impairment level to 32.5%. Tr. 819.

The ALJ noted that Plaintiff's most recent physical therapy notes revealed improved hip pain, increased strength, and better walking tolerance. Tr. 42. Plaintiff herself stated that physical therapy helped relieve the pressure and strain on her hip. Tr. 55; *see also* tr. 850 ("Exercises help when [Plaintiff] takes the time to do them. . . . Acknowledges that activity helps improve the pain.").

The Court recognizes that Plaintiff's hip pain did not resolve entirely. But the evidence supports the ALJ's conclusion that Plaintiff's hip impairment showed improvement over the course of treatment. As for Plaintiff's wrist pain, the ALJ noted that Plaintiff recovered well from carpal tunnel surgery and, as a result, that Plaintiff reported that she was sleeping better and was no longer waking up in the night with her left hand numb. Tr. 42, 270, 833. The ALJ appropriately accounted for Plaintiff's hip arthralgia, history of carpal tunnel syndrome, and obesity in the RFC by limiting her to light work with no more than frequent bilateral handling and fingering. Tr. 41, 45. The record shows that Plaintiff has hearing and vision loss, which doctors confirmed can be improved with hearing aids[3] and glasses. Tr. 929–30, 933–35; *see also* 859, 939–40, 942–44. The ALJ noted Plaintiff's report that she was getting used to new her hearing aid "but overall she felt good about it." Tr. 43, 1209.

Overall, the record demonstrates that Plaintiff's hip and wrist pain, as well as her vision and hearing loss, showed improvements with treatment through physical therapy, surgery, and assistive devices. The ALJ's determination that Plaintiff's symptoms improved with treatment was

---

[3] The Court recognizes that Plaintiff has had difficulty in acquiring hearing aids for both ears because of insurance. Tr. 63-64, 824. However, Plaintiff obtained one hearing aid and has reported improvements in hearing with it. *See* tr. 965, 1209. Further, the ALJ accounted for Plaintiff's hearing restrictions in the RFC.

7 – OPINION AND ORDER

therefore a clear and convincing reason to discredit Plaintiff's testimony as to the severity of her symptoms related to these impairments.

Plaintiff next argues that the ALJ erred in relying on Plaintiff's activities to discredit her symptom testimony. Pl.'s Br. 8. An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina,* 674 F.3d at 1112 (quoting *Lingenfelter*, 504 F.3d at 1040). Plaintiff testified that she uses public transportation on a regular basis, does her own grocery shopping, and goes to church for resources. Tr. 41, 56–58, 63. She lives alone in a 2-bedroom apartment and, in addition to her own self-care, Plaintiff cares for her cat and occasionally her toddler grandson. *See* tr. 56, 276, 850, 855, 888, 1235.

Plaintiff testified that her impairments severely limit her ability to walk, stand, hold items, do everyday household chores, and be in crowds of people. Tr. 54, 57, 59, 61–63. The ALJ found that, in addition to inconsistencies with the medical evidence, Plaintiff's activities were not "limited to the extent one would except [sic] given the complaints of disabling symptoms and limitations." Tr. 45. He found that "[i]n spite of her limitations, [Plaintiff] remains capable of living alone, using public transportation, occasionally going to church and playing bingo, independently handling her own self-care, preparing simple meals and performing household chores and caring for her grandson." Tr. 45–46. The ALJ did not err in considering inconsistencies between Plaintiff's level of activity and her claims of debilitating symptoms as part of his credibility determination. *See Molina*, 674 F.3d at 1112.

Plaintiff next argues that the ALJ improperly considered Plaintiff's demeanor during the administrative hearing. Pl.'s Br. 9. Though an ALJ's personal observations alone cannot support a negative credibility determination, "inclusion of the ALJ's personal observations does not render the decision improper." *See Orn v. Astrue*, 496 F.3d 625, 639 (9th Cir. 2007); *Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Instead, an ALJ's personal observations may be used in the overall credibility evaluation. *Orn*, 496 F.3d at 639.

Finally, Plaintiff argues that the ALJ rejected Plaintiff's symptom testimony based on the objective medical evidence, which was improper because objective evidence cannot be the sole reason for rejecting symptom testimony. Pl.'s Br. 10. As explained above, the ALJ provided valid reasons for discrediting Plaintiff's symptom testimony aside from a lack of substantiation in the medical evidence. In addition to those reasons, the ALJ is allowed to consider inconsistencies between Plaintiff's symptom testimony and the medical evidence. *See Bray*, 554 F.3d at 1227.

Here, the ALJ pointed to multiple inconsistencies in the record that contradict Plaintiff's testimony regarding the severity of her hip and wrist pain, shortness of breath, and inability to walk and stand. Tr. 54. Various treatment notes showed unremarkable findings, including normal muscle tone, 5/5 strength in the upper and lower extremities, intact sensation to light touch in the upper and lower extremities, normal respiratory function, and a normal gait. Tr. 42, 265–66, 273–74, 335, 371, 853–54. A chest x-ray from 2019 showed clear lungs. Tr. 43, 992. Regarding Plaintiff's anxiety, the ALJ cited to treatment records where Plaintiff was alert and oriented with normal thought content, as well as treatment notes that state Plaintiff's "anxiety is stable." Tr. 43, 325, 335, 968, 1107, 1109. The ALJ also noted that Plaintiff reported for mental health services after filing her disability application and stated the reason for treatment as trying to get disability benefits. Tr. 43, 963. The ALJ further recognized that Plaintiff's anxiety disorder limits her ability to understand complex instructions and deal with stressors, particularly people. Tr. 45. He therefore limited Plaintiff to simple, repetitive, routine tasks and only occasional contact with the general public to account for Plaintiff's mental health impairment. *Id.*

9 – OPINION AND ORDER

Overall, while Plaintiff offers an alternate interpretation of the evidence, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony which are supported by substantial evidence in the record. *See Batson*, 359 F.3d at 1193. Further, the ALJ properly accounted for Plaintiff's impairments in the RFC. Accordingly, the ALJ's evaluation of Plaintiff's symptom testimony is affirmed.

## II. Medical Opinion

Plaintiff argues that the ALJ improperly rejected the medical opinion of Kristi Weeks, MA, QMHP, Plaintiff's mental health provider. Pl.'s Br. 10. Under the new regulations for evaluating medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinions. *Woods v. Kijakazi* 32 F.4th 785, 792 (9th Cir. 2022). Now, an ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.* at 787.

Weeks is a Qualified Mental Health Professional and Medical Assistant who saw Plaintiff regularly for mental health treatment beginning in November 2018. On August 9, 2019, Weeks filled out a Mental Residual Functional Capacity Assessment regarding Plaintiff's limitations relevant to her ability to work. Tr. 1255–57. According to Weeks's review, Plaintiff has moderate to extreme limitations in all areas of mental functioning. As to Plaintiff's ability to understand, remember, or apply information, Weeks gave marked and extreme limitations, stating that Plaintiff's memory is unreliable and inconsistent. Tr. 1255. For interacting with others, Weeks gave marked and extreme limitations, stating that Plaintiff has difficulty with trust because of her history with PTSD. Tr. 1256. For concentrating or maintaining pace, Weeks gave marked limitations due to Plaintiff's anxiety. *Id.* Finally, for adaptation, Weeks gave marked and extreme limitations based on Plaintiff's challenges to manage a daily routine. Tr. 1257. Weeks estimated that Plaintiff would be off task more than 50% each day and miss more than 2 days of work per month due to her poor concentration and "challenges with a simple routine." *Id.* at 1257.

The ALJ found Weeks's opinion unpersuasive. He explained that "Weeks' opinion strongly suggests [Plaintiff] has a listing level mental health impairment. However, this assessment is completely unsupported and inconsistent with the objective evidence." Tr. 44.

The ALJ's decision to discredit Weeks's assessment is supported by substantial evidence. The ALJ noted that when Plaintiff began counseling in 2018, in response to why she sought services, Plaintiff reported that she is "trying to get disability, and my attorney thought it would help, and to have counseling. My attorney thought it would be good because at night my brain doesn't shut down, and I don't sleep well." Tr. 43, 963. Plaintiff went on to explain that she doesn't like being around a lot of people or on crowded buses. Tr. 963. She reported her primary

11 – OPINION AND ORDER

concerns as having racing thoughts at night that affected her ability to sleep. Tr. 966. Plaintiff testified to similar symptoms during her hearing. She stated, however, that she has been prescribed medication that "helps with [her] anxiety to relax and sleep at night." Tr. 61. The ALJ went on to note multiple treatment notes where Plaintiff's mental status was assessed as alert and oriented with normal mood and affect and no aphasia, and that Plaintiff answered questions and commands appropriately. Tr. 43, 325, 335, 1107. At her 2018 mental status exam, though her mood was anxious, her thought process was goal directed, her thought content was unremarkable, and her attention was good. Tr. 968. The ALJ pointed to a 2019 progress note that stated Plaintiff's anxiety was stable. Tr. 43, 1109. Plaintiff's own reports, testimony, and mental status exams do not support Weeks's assessment of marked and extreme limitations all areas of mental functioning.

   Further, Plaintiff's treatment notes from her therapy sessions with Weeks do not reflect the limitations identified in Weeks's assessment. *See* tr. 949–70, 972–91, 1235–48. Plaintiff regularly discusses life stressors and past experiences, as well as her symptoms of anxiety, difficulty with sleeping, difficulty in large crowds, and fear at night. Weeks diagnosed Plaintiff with anxiety and PTSD, but the treatment notes do not lend support for Weeks's assessment that Plaintiff has marked and extreme limitations in all areas of memory, interacting with others, concentration, and adaptability. *See* tr. 949 (Plaintiff discussed suicide of a family friend and that she was very attached to him; reported she is "feeling somewhat better and is eager to get started on medication"); tr. 951–52 (Plaintiff recalled difficulties during her childhood and lack of support from mother; expressed interest in completing her GED); tr. 962 (Plaintiff appeared oriented with appropriate dress and fair hygiene; voice and spoken work were difficult to understand at times); tr. 965 (Plaintiff discussed past abusive relationship); tr. 966, 972 (Plaintiff

discussed difficulty with sleeping and trusting others); tr. 981 (Plaintiff reported racing thoughts, insomnia, fear at night and with large crowds); tr. 990 (Plaintiff discussed past sexual assault); tr. 1235 (Plaintiff reported watching her three-year-old grandson the past two weekends; went camping for a couple days; has been sleeping ok; hip pain exacerbated by grandson); tr. 1241 (Plaintiff reported stable mood with ongoing sleep issues). The Court, like the ALJ, recognizes that Plaintiff has a significant mental health impairment. However, the Court agrees that Weeks's treatment notes do not support the assessment that Plaintiff has marked and extreme limitations in every area of mental functioning.

Regarding Plaintiff's concentration specifically, the ALJ found no evidence that Plaintiff has any problems with concentration and did not claim to have any such problems. Tr. 44; *see also* 371, 465, 484, 504. The ALJ explained that Plaintiff's activities of reading and using public transportation were inconsistent with Weeks's severe concentration limitations, and further found "it would be highly improbable that [Plaintiff] could look after her grandson during the day if [] Weeks's assessment were accurate." Tr. 44. Finally, the ALJ found no evidence in the treatment record to support Weeks's findings that Plaintiff would be off-task more than 50% of the day and miss more than two days of work. *Id.*

Overall, the ALJ concluded that "[w]hile the records show [Plaintiff] has a severe mental impairment, the objective evidence does not support that this impairment is disabling." Tr. 43. The ALJ's decision discrediting Weeks's opinion was supported by substantial evidence. *Woods*, 32 F.4th at 787.

## **CONCLUSION**

For the reasons explained herein, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 22nd day of March, 2023.

                                                                                                 /s/ Michael J. McShane
                                                                                                 Michael McShane
                                                                       United States District Judge